MYRNA LABOW, Appellant, v RONALD LABOW, Respondent.

First Department, May 11, 1982

APPEARANCES OF COUNSEL

*Myrna Labow,* appellant *pro se.*

*James Kaufman* of counsel (*E. Mala Hertz* and *Laurence S. Tauber* with him on the brief; *Levitt Greenberg Kaufman & Goldstein,* attorneys), for respondent.

*Austin Gerald Lopez,* guardian ad litem.

**OPINION OF THE COURT**

*Per Curiam.*

The parties were married in New York on July 28, 1960 and have three children, Brenda (now 20 years of age), Sabrina (now 14 years of age) and Steven (now 11 years of age). During the marriage the parties maintained an apartment on Park Avenue and a summer home in Weston, Connecticut. In 1974 plaintiff commenced an action for divorce in the State of Connecticut on the ground of irreconcilable differences. Sometime thereafter the complaint was amended to allege adultery. It is undisputed that during most of the times here involved defendant was residing with a woman not his wife.

The Connecticut court found that the marriage had irretrievably broken down, and on August 28, 1978 granted plaintiff a divorce and awarded her custody of the three children. Defendant was ordered to pay plaintiff $4,500 per month in unallocated alimony and child support, approximately $3,100 per month for utilities and maintenance charges on the marital co-op apartment, and was directed to pay the children's medical and educational expenses.

The Connecticut judgment was subsequently filed and entered in New York on October 10, 1978 and was afforded full faith and credit by order of Special Term (BLYN, J.), affirmed by this court. Leave to appeal to the Court of Appeals was denied.

It is plain from the record that the defendant bitterly contested the Connecticut divorce action and that the parties have been involved in acrimonious litigation ever since, in both the Connecticut and New York courts, premised on the defendant's failure to abide by the alimony and child support provisions.

In 1967 defendant, who is an attorney and an apparently successful investor, had set up for the benefit of the children a substantial trust which he utilized, in part, to discharge his support obligations to the children. In subsequent support proceedings in the New York Family Court, in which the trustee appeared, the trustee and defendant were directed to send plaintiff $1,500 and $1,080 per month, respectively, pending the outcome of defendant's then pending appeal from the Connecticut decree which was ultimately affirmed. Contempt proceedings were instituted by the defendant against the plaintiff, alleging that she was using the funds for her own purposes. At the request of the court, a guardian ad litem, appointed to protect the children's interest in the trust, was requested to look after their emotional as well as their financial interests.

On January 3, 1979 Justice BLYN, with the consent of the parties and the guardian ad litem, and after talking with the three children, entered an order "solely as a stopgap measure by the court while the appeal from the Connecti-

cut judgment was pending." The order directed Steven to spend a two-week school holiday with his grandparents in Florida and to commence regular visits with a court-appointed psychiatrist as long as the child's psychiatrist and school authorities thought it necessary. The court set up a schedule of visitation and directed that no unrelated female sleep in the father's apartment while the children were visiting, and that the defendant pay plaintiff $700 per month for food, clothing and entertainment. Defendant was to direct payment of the co-op maintenance and utility bills by the trustee.

By order to show cause dated October 12, 1979 defendant moved to modify the judgment of divorce to award custody of Steven to him. At the request of plaintiff, Justice GABEL issued an order appointing another psychiatrist to meet with the parties and their children in order to render an opinion about the custody of Steven.

The trial, resulting in the order appealed from, followed. The Trial Justice transferred custody from plaintiff mother to defendant father largely upon the grounds that the mother was obsessed with money matters flowing out of the father's failure to comply with the orders of the court with respect to the payment of alimony, child support and maintenance and other charges respecting the co-op. The Trial Justice found, respecting Steven: "He has an affection for both of them, and he does not want to be placed in a position of taking sides. Here is a child of a broken marriage who is seeking an orderly, peaceful and normal life for himself amidst great difficulties and without giving up either parent."

However, the court found that in seeking to enforce her rights to alimony and child support and related matters, the wife's behavior consisted of improper means. The court stated:

"That's because the major stumbling block in working out any rational bases for custody and visitation is money.

"*This court is not going to try and place any blame in this proceeding for that. I get the impression that the defendant may have successfully divested himself of assets by establishing a trust for the sole benefit of his children to the*

*exclusion of his wife. This, of course, is bound to cause bitter feelings. The husband has apparently defied both the orders of the Connecticut Courts and the New York Courts, and whether this has been wilful or not is not my province to determine."* (Emphasis supplied.)

The court then went on to denounce the procedures invoked by the plaintiff to enforce alimony and child support. The court was critical of her behavior on the witness stand, evidencing an obsession with enforcing her rights. The court relied heavily on the psychiatrists' testimony and the child's views. Nowhere in the court's opinion is there any recognition of the key fact, the failure of the defendant to comply with the various orders and judgments directing him to pay alimony and child support. Almost no consideration is given to his failure to discharge his financial obligations, which invited the means employed by the plaintiff to enforce payment. The conduct of the plaintiff is characterized, but the impact of the failure of the defendant to support his wife and children as directed is ignored. It is plain, although not mentioned, that if such payments were made, there would be no need for plaintiff to institute the various procedures, wise or otherwise, to enforce payment.

The first court-appointed psychiatrist, in his 12-page affidavit and testimony in support of the father's application, similarly did not consider what the consequences would have been or would be if defendant complied with his financial obligations with respect to alimony and child support. The psychiatrist apparently considered that the moneys plaintiff was receiving were ample and that her demands were irrational. Thus, the psychiatrist stated that plaintiff "was obsessed with having defendant pay the full amount provided in the judgment of divorce even though she does not explain why she needs so much money to live." Why the doctor was entitled to offer such explanation does not appear. On the other hand, according to the doctor, defendant explained to him that the trustee paid for the children's school, camp and medical bills as well as the maintenance of the co-op and that defendant buys all of the children's clothing himself and "contributes an additional $700 per month to Mrs. Labow, which is all he says he can

afford." In effect, passing on the terms of the divorce decree and on defendant's ability to comply with the support provisions of the decree, the doctor did not believe, based upon his own observations, that plaintiff did not have enough money to feed and properly care for herself or her children.

It is plain that the psychiatrist was satisfied that whatever defendant chose to pay plaintiff was sufficient and that her efforts to enforce the court orders and judgment constituted some kind of paranoia or obsession. Quite obviously it is not the function of the psychiatrist to determine whether the amounts awarded by the court are appropriate, nor to conclude that because plaintiff is determined to enforce the decree, she suffers a serious psychiatric disability. Completely disregarded are the consequences that might attend if the father complied with his obligations.

The second psychiatrist was somewhat more flexible. He observed: "No one including Mr. LaBow has ever criticized her for not taking good care of her children and her home." This doctor was certain that the financial facts could be determined by the court. If they were substantially as related by defendant rather than by plaintiff, it would mean that plaintiff has an abnormal psychological problem which has fixed itself on money as a symbol. However, no such view was taken respecting the father if the facts were as related by the mother. The doctor concluded that since plaintiff was unable to conceive of any kind of compromise, there was only one solution — custody to the father with visitation to the mother as frequently as the child would wish. The doctor never considered whether compliance by defendant with his obligations would alleviate or eliminate the problem. He concluded that there would be a settlement if custody was awarded to the father.

The guardian ad litem's testimony suffered the same defect.

It is noted, although not part of the record, that it was conceded on argument that a motion to punish defendant for contempt for failure to pay the sum of $76,000 in arrears had been granted by Justice BLYN. It is apparent

that neither the Trial Justice nor the two psychiatrists nor the guardian ad litem gave any real consideration to the fact that the defendant was willfully creating the very situation of which he complains, nor to the possibility that this was his purpose. Surely this is a proper consideration in a change of custody proceeding.

We recognize that in matters of this character the finding of the nisi prius court must be accorded the greatest respect (*Matter of Ebert v Ebert,* 38 NY2d 700, 703). We are also aware of the apparent wish of the young son Steven that custody be awarded to his father, and that the child's view is entitled to serious consideration, although it is not determinative (*Matter of Nehra v Uhlar,* 43 NY2d 242, 249; *Matter of Ebert v Ebert, supra; Dintruff v McGreevy,* 34 NY2d 887, 888-889).

We are aware that in a change of custody proceeding the best interests of the child are entitled to primary consideration (*Friederwitzer v Friederwitzer,* 55 NY2d 89). This is especially so where the parties, by agreement, have created a custody arrangement, or where the court by decree has directed it and such agreement or decree is later sought to be changed on the ground of a change in circumstances. The only change of circumstance here was the failure of the father to comply with his court-ordered obligations, bringing about the efforts of the mother to enforce them, with the consequent "hassle", as described by the child. Just as we have noted that no consideration was given by the Trial Judge or the two psychiatrists or the guardian to defendant's apparently successful technique of bringing about a change in custody by failing to comply with court orders, they also failed to consider the effect of this technique on the child's thinking. It hardly seems to be in the best interests of a child for him to learn the efficacy of such a technique and to observe it practiced by his father and approved by the court. The manipulation of the child by such techniques is manifest.

In essence, what is involved here is a prosperous father living in his own apartment with a woman whom he says he intends to marry, and a mother left with three young children who, in addition to raising them alone for several years, has had to resort continuously, in and out of the

courts and by all means available, to obtain alimony and child support. Even though the life style is higher than average, the inability to pay bills for the co-op, tuition and other expenses imposed an irksome burden. It is obviously easier for the father to be more relaxed and flexible in his dealings with his son than the mother can be. He continually ignored the financial terms of the divorce decree and his obligations thereunder. He transferred a substantial portion of his assets to a trust, compelling plaintiff to deal with the trustee. He has sought to place his assets beyond reach. Plaintiff's obsession has plainly been brought about by defendant's conduct. The record is barren of evidence of the father's efforts to comply with his court-decreed support obligations. The record does not support a finding that plaintiff is mentally unfit to care properly for Steven. It strongly suggests that if defendant were to comply with his obligation, the issue would disappear from the case. Under the circumstances, there was no warrant for the change in custody, else a pattern would be established whereby noncompliance with court decrees would be rewarded because such noncompliance has brought about its desired effect. The best interests of the child are not served by such a change in custody.

Accordingly, the order of the Supreme Court, New York County (BRYANT, J.), entered on August 15, 1980 which modified the judgment of divorce and transferred custody of the couple's son Steven from plaintiff mother to defendant father, should be reversed, on the law and the facts and in the exercise of discretion, with costs, the order transferring custody should be vacated and custody restored to the plaintiff mother.

KUPFERMAN, J. P., SULLIVAN, FEIN and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on August 15, 1980, unanimously reversed, on the law and the facts and in the exercise of discretion, the order transferring custody vacated and custody restored to the plain-

tiff mother. Appellant shall recover of respondent $75 costs and disbursements of this appeal.